IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DELARE D. HOLTE,
       Plaintiff,

    v.

STEINER CORP. dba ALSCO INC.,
a Nevada business corporation.

      Defendant.

Civ. No. 08-1329-AA
OPINION AND ORDER

_____

Daniel Snyder
Erin McCool
Law Offices of Daniel Snyder
1000 S.W. Broadway, Suite 2400
Portland, Oregon 97205
    Attorney for plaintiff

Thomas M. Triplett
Bethany C. Graham
Schwabe, Williamson & Wyatt, P.C.
Mill View Way Building
360 S.W. Bond Street, Suite 400
Bend, Oregon 97702
    Attorney for defendant

AIKEN, Chief Judge:

    Plaintiff filed suit alleging violations of the Family Medical

Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*, and the Oregon Family

1 - OPINION AND ORDER

Leave Act (OFLA), Or. Rev. Stat. § 659A.165; disability discrimination and retaliation under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112 and Or. Rev. Stat. § 659A.112; discrimination based on gender and sexual orientation in violation of Title VII, 42 U.S.C. § 2000e-2, Or. Rev. Stat. § 695A.030, and Portland City Ordinances 23.01.050 & 23.01.080; disparate treatment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 and Or. Rev. Stat. § 659A.030; workers' compensation discrimination claims under Or. Rev. Stat. §§ 659A.040 and 659A.043; discrimination for initiating a civil lawsuit under 659A.230; and the state common law tort of wrongful discharge. Defendant moves for summary judgment on all claims. The motion is granted.

## I. Factual Background

Plaintiff, Delare Holte, worked for defendant Steiner Corporation, doing business as ALSCO, Inc. (ALSCO), from 1982 until his termination in 2008. In twenty-six years of employment with defendant, plaintiff spent twenty-two years at the ALSCO Industrial Division Plant (the Plant) in Portland.

In 1992, plaintiff learned he had HIV, but he did not disclose his diagnosis with anyone at the Plant. In 1994 plaintiff was promoted to the position of Service Manager, a position he held until March 2007. At this time, David Harris was general manager of the Plant and plaintiff's direct supervisor.

From 1994 to 2006, defendant was generally satisfied with

plaintiff's work performance, and in January 2004, defendant gave plaintiff a bonus.  In October 2005, plaintiff received a pay cut, as did at least one other Plant manager, due to declining revenue at the Plant.  In 2006, defendant issued two written notices to plaintiff detailing concerns with plaintiff's work performance.

In January 2007, an employee plaintiff supervised, Becky Solee, filed a complaint against plaintiff.  Solee reported to Harris that plaintiff subjected her to verbal abuse at work.  After Solee filed a second complaint against plaintiff in March 2007, defendant hired the United Employers Association (UAE) to investigate the matter.  The investigator's report recommended removing plaintiff as Solee's supervisor.  Plaintiff was offered a new position, and on April 1, 2007, plaintiff's title changed from "service manager" to "customer service manager."  Plaintiff worked in a different building than the service department building and no longer supervised Solee.  Plaintiff's new position did not affect his salary or commission eligibility.

In May 2007, defendant hired a new service manager, Bill Edwards.  Edwards was forty-six at the time, three years younger than plaintiff.  Although Edwards had related industry experience, he had not previously worked as a service manager.  After Edwards was hired, defendant offered plaintiff a new position as co-manager of the stockroom, effective June 4, 2007.  This position included a salary cut.

Prior to starting the stockroom position, plaintiff injured his back at work.  Plaintiff filed a worker's compensation claim on

3 - OPINION AND ORDER

May 24, 2007, and missed work from June 7 through June 14, 2007
because of the injury. In mid-June 2007, defendants asked
plaintiff to take a drug test; the test results were negative.
Plaintiff began receiving workers' compensation payments on or
about June 24, 2007, and was off work from late June 2007 until
early January 2008. Neither plaintiff nor defendant considered
plaintiff's absence as "leave" under FMLA or OFLA.

Eventually, plaintiff's doctor released plaintiff for work in
a "light duty" position, and plaintiff returned to work January 2,
2008 as collections clerk, a light duty clerical position.

In late 2007 or early 2008, Jean Witt, a Plant management
employee, heard fellow employee Jeff Presley make a derogatory
remark about plaintiff's sexuality. Witt reported the comment to
Harris. Harris issued Presley a written warning, asserting that
defendant would not tolerate such offensive behavior. Around the
same time, Presley used the word "faggot" in plaintiff's presence,
and made a joke cautioning other workers not to "bend over" near
plaintiff. Immediately following both incidents, a Plant manager
talked to Presley privately about the inappropriateness of these
comments. Presley made no further derogatory comments.

On January 25, 2008, plaintiff filed a complaint with the
Oregon Bureau of Labor and Industries (BOLI) alleging
discrimination by defendant. The complaint listed the wrong
address for the defendant's headquarters. BOLI administratively
corrected the address, and alerted plaintiff of the amendment in
April 2008.

4 - OPINION AND ORDER

On March 31, 2008, defendant issued plaintiff a performance warning for several work absences during the month.

In April 2008, plaintiff filed a second BOLI complaint, supporting his claims with more detailed allegations.

BOLI dismissed plaintiff's first complaint, and BOLI and the EEOC sent plaintiff a right to sue letter in late April 2008. BOLI also dismissed plaintiff's second complaint and issued a right to sue letter in August 2008.

In July 2008, defendant issued plaintiff another performance warning detailing plaintiff's tardies and absences during June and July 2008.

Harris retired in July 2008, and Eric Koenig replaced him as general manager of the Plant. In August or September 2008, plaintiff's doctor lifted plaintiff's work restriction, and defendant offered plaintiff a new position. In September 2008, plaintiff became account sales consultant. This position paid more than plaintiff's collections clerk position and included use of a company truck during business hours. In Fall 2008, plaintiff attended a one-week sales consultant training in Utah. During the three months plaintiff worked as a sales consultant, he failed to finalize a sale.

On November 12, 2008, plaintiff filed the instant lawsuit against defendant alleging unlawful discrimination in violation of several state and federal statutes.

On December 19, 2008, plaintiff drove the company truck home from work. Around midnight that evening, someone called the 1-800

number on the back of the company truck and reported that plaintiff was parked in an adult shop parking lot and appeared intoxicated. Koenig learned of the drunk driving report and verified that plaintiff's company truck was parked at an adult store the night of December 19. Koenig discussed the incident with plaintiff and subsequently terminated plaintiff's employment.

Since his termination, plaintiff has filed for Social Security Disability income. Plaintiff has also amended his complaint to allege discrimination based on his termination.

## II. Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for

trial. Id. at 324.

The court must resolve all reasonable doubts as to the existence of genuine issues of material fact against the moving party and construe all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630. However, the Ninth Circuit has refused to find a genuine issue of fact where the only evidence presented is "uncorroborated and self-serving" testimony. Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996).

### III. Discussion

Plaintiff alleges multiple federal and state claims against defendant. Plaintiff claims defendant discriminated against him because of his disability, gender, and age under the ADA, FMLA, Title VII, and ADEA, as well as their state law counterparts. Based on the same underlying facts, plaintiff also claims discrimination in violation of state workers' compensation statutes and for initiating a civil suit, as well as the common law tort of wrongful discharge.

Defendant moves for summary judgment on all claims, claiming plaintiff has failed to raise any genuine issues of material fact. Defendant's motion is granted.[1]

---

[1] Defendant argues that most of plaintiff's claims are procedurally barred from this court's review because plaintiff did not file suit within ninety days of receiving his first right to sue letter. Plaintiff's original BOLI complaint was filed in January 2008. Plaintiff amended and refiled his BOLI complaint in April 2008. In early April 2008, BOLI sent plaintiff a notice of its administrative amendment to plaintiff's original complaint, changing the address of defendant's headquarters. On

7 - OPINION AND ORDER

A.  Disability Discrimination Claim

Plaintiff claims unlawful discrimination under the ADA and its Oregon counterpart on the basis of his alleged disabilities.  See 42 U.S.C. § 12112(a), Or. Rev. Stat. § 659A.112; see also Washburn v. Columbia Forest Products Inc., 340 Or. 469, 473, 134 P.3d 161 (2006) (stating that the Oregon statute is designed as a mirror image of the Americans with Disabilities Act); Snead v. Metropolitan Porperty & Case. Ins. Co., 237 F.3d 1080, 1087 (9th Cir. 2001) ("The standard for establishing a prima facie case of discrimination under Oregon law is identical to that used in federal law.").

In 1999, plaintiff began taking anti-viral HIV medication, and in 2001, he started prescription medication for depression. Plaintiff maintains he suffered side affects from these medications that caused him to emit an odor and to gain weight.  Plaintiff

---

April 9, 2008, BOLI dismissed plaintiff's original complaint and notified plaintiff of his right to sue in state court within ninety days.  On April 28, 2008, the EEOC mailed plaintiff a right to sue notice, alerting plaintiff that he had ninety days to file a federal law suit.  However, plaintiff did not file suit until November 12, 2008.

Plaintiff claims that pursuant to his correspondence with a BOLI representative, he did not believe his first complaint to be valid due to the erroneous address of defendant's headquarters. At oral argument, plaintiff conceded that his claims are untimely, but argued that his case presents extraordinary circumstances and warrants equitable tolling.

Regardless, because I find all plaintiff's claims fail on the merits, I do not decide whether plaintiff's equitable tolling arguments apply.  See Learned v. City of Bellevue, 860 F.2d 928, 931 (9th Cir. 1988); cf. Vasquez v. County of Los Angeles, 349 F.3d 634, 645-46 (9th Cir. 2004).

alleges that once defendant knew or perceived he was disabled, defendant discriminated against plaintiff because of his impairments and failed to accommodate his disabilities. Specifically, plaintiff claims that from 1999 until 2004 Harris referred to plaintiff as "smell" or "chub." Plaintiff also claims that in 2004 defendant requested that plaintiff release his medical records to defendant.

The ADA makes it unlawful for a private employer to discriminate against a qualified individual with a disability. 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination, plaintiff must show: (1) he is disabled within the meaning of the statute; (2) he is a qualified individual, able to perform the essential functions of his job with or without reasonable accommodations; and (3) he suffered adverse employment action based on his disability. Nunes v. Wal-Mart Stores, 164 F.3d 1243, 1246 (9th Cir. 1999).

A "disabled" person within the meaning of the statute is one who has, or is regarded as having, a "physical or mental impairment that substantially limits one or more major life activities," such as sleeping, eating, and walking. 42 U.S.C. § 12102(1)(A), (2)(A). The United States Supreme Court has established that there is a "demanding standard for qualifying as disabled." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 197 (2002).[2] To

---

[2]Recent statutory revisions to the ADA broadened the definition of disabled. ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (ADAAA) ("The definition of disability in this Act shall be construed in favor of broad coverage of

qualify as disabled, a plaintiff must do more than "merely submit evidence of a medical diagnosis of an impairment." Id. at 198. The plaintiff must show that the impairment's impact is permanent or long term. Id.

Plaintiff alleges he is disabled, or regarded as disabled, by physical impairments caused by HIV. Many circuits, including the Ninth Circuit, include procreation as a major life activity. McAlindin v. County of San Diego, 192 F.3d 1226, 1234 (9th Cir. 1999) (adopting the holding in EEOC v. R.J. Gallagher Co., 181 F.3d 645, 656 (5th Cir. 1999) that "sexual relations, just like procreation" constitutes a major life activity). Plaintiff also asserts that his HIV-related neuropathy substantially affects his ability to walk and stand, and his depression substantially limits his ability to sleep and eat. See MacVeigh Decl., p. 3. Drawing all inferences in favor of the nonmoving party, I assume, without finding, that plaintiff is disabled with regard to these health

---

individuals under this Act, to the maximum extent permitted by the terms of this Act."). The ADAAA became effective January 1, 2009. The Ninth Circuit, consistent with sister circuits, held that the amendments do not apply retroactively. Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1164 (9th Cir. 2009). Plaintiff originally filed suit in November 2008, but filed a second amended complaint in October 2009. The alleged discrimination occurred before January 1, 2009. Ninth Circuit case law regarding retroactive application suggests, by analogy, that the timing of defendant's conduct, rather than the date the complaint is filed, controls the applicability analysis. See Scott v. Boos, 215 F.3d 940, 950 (9th Cir. 2000) ("We conclude that the definitive acts for purposes of retroactivity ... are the dates of the defendants' conduct.") Thus, since defendant's alleged conduct occurred prior to January 1, 2009, the ADAAA does not apply.

conditions.

At the second step of the inquiry, plaintiff must show he is a "qualified individual." "Qualified" means a disabled individual who can, with or without accommodation, "perform the essential functions" of the job. 42 U.S.C. § 12111(8). In the absence of evidence to the contrary, I find plaintiff is a qualified individual under the statute.

The last step in the inquiry is whether plaintiff suffered adverse employment actions because of his disabilities. The ADA prohibits an employer from "limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee." 42 U.S.C. § 12112(B)(1).

Defendant maintains that plaintiff offers no evidence that defendant discriminated against him based on his health conditions. Defendant claims that Harris did not know about plaintiff's disabilities, and plaintiff conceded this fact at his deposition. Although plaintiff testified that he thought Harris "found out" about his HIV, plaintiff testified that he never disclosed his HIV status at work, and that he did not know if Harris had any knowledge of his HIV status. Holte Dep., pp. 51-52, 233-35. Plaintiff also testified that Harris never made comments about plaintiff having HIV. Id. p. 52. In his later declaration, plaintiff claims that after Harris referred to him as "smell" and "chub," plaintiff told Harris about his disabilities, his

11 - OPINION AND ORDER

prescribed medication, and the side affects of the medication. Holte Decl., p. 6. Thus, plaintiff's declaration stands in sharp contrast to what he testified to under oath. Plaintiff's declaration statements do not raise a triable issue of fact where they contradict his earlier testimony. See Van Asdale v. Int'l Game Tech., 577 F.3d 989, 998 (9th Cir. 2009).[3]

Plaintiff also claims that during the time he missed work due to his job-related back injury, plaintiff's doctor sent a medical report to defendant that accidentally included plaintiff's HIV status. However, plaintiff testified that no Plant employee besides human resources manager Jessica Hall learned of his HIV status from that report. Holte Dep., p. 235.

Thus, plaintiff fails to provide any evidence that defendant took adverse employment actions against plaintiff because it knew or perceived of plaintiff's disabilities.

Plaintiff also claims that defendant failed to engage him in an "interactive process." See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002) (citing Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1112 (9th Cir. 2000), vacated on other grounds, U.S. Airways, Inc. v. Barnett, 535 U.S. 391 (2002)). Although plaintiff reported trouble walking and standing due to his HIV-related

---

[3] To discredit plaintiff's declaration statements, this court must first find that the declared allegation "flatly contradicts" the earlier deposition testimony. Van Asdale, 577 F.3d at 999. Next, this court must find that the inconsistency is "clear and unambiguous." Id. at 998. Here, the deposition transcript does not suggest that plaintiff was confused or misled by opposing counsel, and his later declaration directly contradicts his sworn testimony.

neuropathy, he has not demonstrated that defendant knew about these impairments or failed to reasonably accommodate him. See 29 C.F.R. § 1630.9(a) ("It is unlawful for [an employer] not to make reasonable accommodation to the known physical or mental limitations.") (emphasis added). Defendant's obligation to engage plaintiff in the interactive process is not triggered if defendant does not know of plaintiff's disabilities. Barnett, 228 F.3d at 1112. Because plaintiff never requested accommodation for his disabilities and failed to show that defendant knew or perceived of his disabilities, I find plaintiff was not entitled to an interactive process.

Plaintiff has not made a prima facie case of discrimination on the basis of disability in violation of the ADA. Therefore, defendants motion as to plaintiff's federal and state disability claims are granted.

B. Family and Medical Leave Claims

Plaintiff alleges that defendant discriminated against him for taking medical leave. Plaintiff claims defendant took adverse employment actions against him in violation of FMLA protections against employer interference and discrimination, and OFLA's protection against retaliation. These claims fail, because as defendant notes, plaintiff has not established that the leave he took was designated as "protected leave" under either federal or state leave acts.

The FMLA and OFLA provide up to twelve weeks of unpaid leave to qualified employees who miss work for reasons enumerated in the

statute, including a serious medical condition. 29 U.S.C. § 2612; Or. Rev. Stat. § 659A.103. Under the FMLA and OFLA employers may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" employees' rights to leave. 29 U.S.C. § 2615(a)(1); Or. Rev. Stat. § 659A.103. As part of a prima facie case, a plaintiff must show that he exercised his rights under the Act. See 29 U.S.C. § 2612(a).

To invoke FMLA leave, an employee need only request time off work for a qualifying medical purpose. Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1130-31 (9th Cir. 2001); 29 C.F.R. § 825.303(b). Once requested, the employer is responsible for determining if the reason for plaintiff's leave request meets FMLA criteria. Bachelder, 259 F.3d at 1130-31; 29 C.F.R. § 825.303(a). If the employer finds an employee's request qualifies, the employer may require additional documentation and certification before formally designating the requested time off as medical leave. See 29 U.S.C. § 2613, 29 C.F.R. § 825.303(b).

Plaintiff claims that his absence from June through December 2007 constituted medical leave, protected under the FLMA and OFLA. During that nearly six-month period, plaintiff received workers' compensation due to a back injury he sustained in May 2007.[4]

---

[4] Although invoking the workers' compensation system does not preclude an employee from taking protected medical leave, the employee must still fill out paperwork as required by the employer. See 29 C.F.R. § 825.702(d)(2) (indicating that workers' compensation and FMLA leave can run concurrently). Here, plaintiff could only have designated twelve weeks of his six-month leave as FMLA/OFLA leave.

Further, plaintiff conceded that he refused to fill out the requisite paperwork to designate any portion of this absence as a "medical leave." Holte Dep. 289-90. Plaintiff also testified that he was not denied medical leave, nor was he retaliated against with respect to his request for leave. Id. Plaintiff thus provides no evidence that he invoked his rights under the Act.

Plaintiff also claims that the intermittent days he missed in March, June, and July 2008 were protected leave days, and defendant discriminated against him by issuing performance warnings based on his absences. Again, plaintiff has not demonstrated that these absences constituted protected leave. See 29 U.S.C. § 2612(b)(1) ("Leave ... shall not be taken by an employee intermittently or on a reduced leave schedule unless the employee and the employer of the employee agree otherwise."); Bachelder, 259 F.3d at 1125 (holding that an employee's absence only triggers FMLA protection when it meets the Act's enumerated reasons). Plaintiff has not shown that he sought protected leave for these absences or that he was absent for qualifying reasons. Under these circumstances, plaintiff's claim that his doctor wrote a note excusing plaintiff from work does not in and of itself create a triable issue of fact.

In sum, no genuine issue of material fact exists where defendant denies that plaintiff invoked his FMLA or OFLA rights, and plaintiff puts forth no evidence to the contrary. Rather, the evidence shows that defendant made plaintiff aware of his right to take medical leave, and plaintiff refused to complete the necessary paperwork. Plaintiff cannot now claim defendant violated the

15 - OPINION AND ORDER

rights plaintiff chose not to invoke. Plaintiff has not provided evidence to support his FMLA or OFLA claims, and therefore defendant's motion with respect to these claims is granted.

C. Gender Discrimination Claim

Plaintiff alleges gender discrimination in violation of 42 U.S.C. § 2000e-2 and Or. Rev. Stat. § 659A.030. To make a prima facie case for sex discrimination under Title VII, a plaintiff must show that "the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender." Jespersen v. Harrah's Operating Co., 444 F.3d 1104, 1109-10 (9th Cir. 2006). "In establishing that 'gender played a motivating part in an employment decision,' a plaintiff ... may introduce evidence that the employment decision was made in part because of a sex stereotype." Id. at 1111 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 250-51 (1989)). Thus, plaintiff can show gender discrimination if there is evidence that he was treated differently because he failed to "conform to commonly-accepted gender stereotypes." Id. at 1112-13. If plaintiff presents a prima face case, the burden shifts to defendant to articulate "some legitimate, nondiscriminatory reasons for plaintiff's rejection." McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If defendant does so, the burden shifts back to plaintiff to show that defendant's reasons are pretextual. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981).

"The requisite degree of proof necessary to establish a prima

16 - OPINION AND ORDER

facie case for Title VII ... on summary judgement is minimal and does not even need to rise to the level of a preponderance of the evidence." Chuang v. Univ. of Calif. Davis, Bd. of Trustees, 225 F.3d 1115, 1124 (9th Cir. 2000) (quoting Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1996)). At the same time, "purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgement." Forsberg v. Pac. Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988).

Plaintiff's argument is not entirely clear, but seems to rest on the allegation that defendant treated him differently because they believed his status as a gay man does not conform with gender stereotypes.    Plaintiff claims he suffered multiple negative employment consequences because of his status, including position transfers, salary cuts, and termination.

Defendant argues that plaintiff clearly testified that he meets commonly-accepted male stereotypes, and has provided no evidence to support an inference of gender discrimination.

I am inclined to agree with defendant. Plaintiff testified at his deposition that his behavior is consistent with commonly accepted male stereotypes. Holte Dep., p. 283. Further, plaintiff testified that "many people" at work did not know about his sexual orientation during the entire time he worked for defendant. Id. pp. 283-84. Further, plaintiff has not shown than any negative employment actions were motivated by his gender or sexual orientation. There is no evidence of discriminatory comments by a decisionmaker, or other inferences of discrimination. In contrast,

17 - OPINION AND ORDER

defendant has provided legitimate, documented reasons behind each alleged "adverse" action. Plaintiff's 2007 job transfers followed his alleged workplace abuse of a subordinate, and defendant transferred plaintiff on recommendation of a third party investigator. When plaintiff returned to work after his workers' compensation leave, defendant accommodated his "light duty" work restrictions and transferred him to a higher paying sales position once his medical restrictions were lifted. Finally, defendant terminated plaintiff after he abused his company car privileges, while reportedly intoxicated.[5]

Therefore, I find that plaintiff fails to produce any evidence permitting an inference that defendant's decisions regarding position transfers or termination were motivated by gender

---

[5] At oral argument, plaintiff argued that supplemental materials relating to his Social Security disability application create a genuine issue of material fact regarding his termination. Although this court grants plaintiff's motion, the supplemental information does not change my analysis. Plaintiff submits a questionnaire defendant completed pursuant to plaintiff's social security disability claim. On the form, HR administrator Jessica Hall wrote that plaintiff left defendant's employment because he was "unable to meet sales standards." Plaintiff contends this assertion raises a genuine issue of material fact regarding why defendant terminated plaintiff. As defendant noted in its response, plaintiff testified that defendant terminated him for the unauthorized use of a company vehicle. Holte Dep., pp. 150, 250-58. Further, defendant claims that plaintiff failed to finalize a sale in his three months as account sales consultant, and plaintiff does not refute this assertion or offer evidence to the contrary. Therefore, I do not find that the supplemental materials create a material issue of fact.

18 - OPINION AND ORDER

discrimination.[6] Moreover, defendant sets forth legitimate, non-discriminatory reasons for its employment decisions.

Plaintiff also alleges a hostile work environment claim under Title VII and Or. Rev. Stat. § 659A.030. Plaintiff claims Harris fostered a hostile work environment because he knew plaintiff was gay and had HIV. Plaintiff's evidence supports neither claim. As noted earlier, plaintiff presents no evidence that his supervisors knew or perceived of his HIV.

Plaintiff further alleges that once fellow employees learned of his sexual orientation, he was harassed at work. Specifically, an employee who worked beneath plaintiff twice made harassing comments in front of plaintiff and once made a derogatory comment about plaintiff's sexuality to another Plant employee. While plaintiff provides evidence of three harassing comments, plaintiff testified that those were the only comments he ever heard. Id. pp. 58, 327.[7] Further, plaintiff acknowledges that all three of these incidents were promptly addressed by defendant and that the comments ceased.

In sum, I find plaintiff has failed to make a prima facie case

---

[6] Similarly, I find the evidence does not support an inference of discrimination based on sexual orientation under Or. Rev. Stat. § 659A.030 and Portland City Ordinances 23.01.050 and 23.01.080.

[7] Plaintiff's memorandum suggests the co-worker's harassing comments were more pervasive. This suggestion is not supported by plaintiff's declaration and directly contradicts plaintiff's sworn testimony.

of hostile work environment.

D. Age Discrimination Claims

Plaintiff alleges age discrimination claims under the ADEA, 29 U.S.C. § 623, and Or. Rev. Stat. § 659A.030, claiming that defendant discriminated against him and terminated his employment because of his age.

The United States Supreme Court recently overtured the burden-shifting approach previously applicable to ADEA claims. Rather than apply the McDonnell Douglas test used to review Title VII claims, the Supreme Court held ADEA claims must be reviewed under a "but-for" test. Gross v. FBL Fin. Servs., 129 S. Ct. 2343, 2352 (2009).[8]

> We hold that a plaintiff bringing a disparate-treatment
> claim pursuant to the ADEA must prove, by a preponderance
> of the evidence, that age was the "but-for" cause of the
> challenged adverse employment action. The burden of
> persuasion does not shift to the employer to show that it
> would have taken the action regardless of age, even when
> a plaintiff has produced some evidence that age was one
> motivating factor in that decision. Id.

Thus, to establish age discrimination based on disparate treatment, plaintiff must demonstrate that he was: (1) at least forty years old; (2) performing his job satisfactorily; and (3) discharged or demoted because of his age. See id.; see also Diaz v. Eagle Produce Ltd. Partnership, 521 F.3d 1201, 1207 (9th Cir.

---

[8] Plaintiff claims that even if he does not meet the "but-for" test outlined by the Supreme Court, the burden-shifting analysis still applies to his state age discrimination claim. Because plaintiff fails to establish a prima facie case for age discrimination under either the burden-shifting or but-for test, I need not decide which analysis applies to the Oregon statute.

2008).

Plaintiff alleges defendant discriminated against him by continually lowering the his wages while paying equally or lesser qualified, younger employees higher wages. Specifically, plaintiff alleges defendant: (1) cut his pay in October 2005; (2) transferred him from service manager to customer service manager in March 2007; (3) transferred him again to stockroom co-manager in May 2007; (4) placed him in the collections clerk position in January 2008; (5) transferred him to account sales consultant in September 2008; and (6) terminated his employment in December 2008. It is undisputed that plaintiff was over forty at the time of all these actions.

Defendant produces evidence that plaintiff did not perform his job satisfactorily, and that defendant's concern with plaintiff's job performance motivated some of the above position transfers. Plaintiff denies all allegations of poor work performance. Construing all inferences in plaintiff's favor, I assume, without deciding, that plaintiff performed his job satisfactorily or that issues of fact preclude summary judgment on this basis. However, plaintiff presents insufficient evidence to prove age was the cause of any adverse employment action.

Plaintiff's allegations do not raise the inference that but-for his age, defendant would have acted differently. First, at least two employees, including plaintiff, received a pay cut in 2005. While both employees were over forty, defendant issued these pay cuts after it lost a major client. Harris Dep., p.127-28. Second, plaintiff's subsequent transfers and eventual termination

21 - OPINION AND ORDER

are supported by legitimate, nondiscriminatory reasons, as explained above. The evidence does not suggest plaintiff's age influenced any of these employment decisions.

In sum, there is no evidence in the record that supports an inference that plaintiff's age motivated defendant's decisionmaking, and plaintiff's allegations fall far short of showing that "but-for" plaintiff's age, defendant would have acted differently.

E. Workers' Compensation

1. Injured Worker Status

Plaintiff alleges unlawful discrimination for utilizing the workers' compensation system pursuant to Or. Rev. Stat. § 659A.040. Specifically, plaintiff alleges defendant changed the terms and conditions of his employment because he filed a workers' compensation claim in May 2007.

To prove unlawful termination based on injured worker status, plaintiff must establish that: 1) he invoked the workers' compensation system; 2) he experienced an adverse employment action in tenure, terms, or conditions of employment; and 3) a casual link exists between the two. See Kirkwood v. Western Hwy Oil Co., 204 Or. App. 287, 293, 129 P.3d 726 (2006), rev. denied, 341 Or. 197, 140 P.3d 580 (2006). If a plaintiff can show evidence of discrimination, defendant's evidence of a nondiscriminatory motive is insufficient to support summary judgment. Hardie v. Legacy Health Sys., 167 Or. App. 425, 437, 6 P.3d 531 (2000), rev. denied 332 Or. 656, 36 P.3d 973 (2001), partially superseded by statute

22 - OPINION AND ORDER

on other grounds, Or. Admin. R. 839-006-0205(6)(b).    The third
element is at issue here.

To show a causal link between plaintiff's use of workers'
compensation and any adverse employment action, plaintiff must
establish that in the absence of a discriminatory motive, he would
have been treated differently. Hardie, 167 Or. App. at 425, 6 P.3d
531.    In other words, plaintiff must show that if he had not
invoked the workers' compensation scheme, defendant would not have
changed the terms and conditions of his employment.

Plaintiff argues that the timing of his transfer to stockroom
co-manager, a week or so after he filed for workers' compensation,
establishes causation.    While the court considers temporal
proximity at this step of the analysis, timing alone does not
establish causation. See Hardie, 167 Or. App. at 433, 6 P.3d 531.

Plaintiff filed a workers' compensation claim on May 24, 2007,
and his position as stockroom co-manager became effective June 4,
2007.    However, defendant initially altered the terms and
conditions of plaintiff's employment in March 2007, moving him from
the service department building to the stockroom building, and
changing his title from service manager to customer service
manager.  This transfer occurred months before plaintiff's injury,
and followed an investigation in verbal abuse by the plaintiff.
Defendant hired a new service manager on May 15, 2007, the day
before plaintiff's injury occurred. After this hire, defendant no
longer required plaintiff's customer service manager position, and
offered plaintiff the position of stockroom co-manager.

23 - OPINION AND ORDER

After his injury, plaintiff was unable to work, and began receiving workers' compensation payments on or about June 24, 2007. Plaintiff does not allege that defendant contested these absences. At his deposition, plaintiff reported that no Plant employee made any negative reference to his workers' compensation claim:

> Q:    Did Mr. Harris even say anything negative
>       to you about your-either your Workers'
>       Compensation injury or your claim?
> A:    Not negative about that. Uh-
> Q:    Did anyone else-oh, I'm sorry.
> A:    Not to my knowledge.

Holte Dep., p. 138.

Plaintiff testified that he returned to work in January 2008 as a collections clerk because it was a light duty position. Id. at 128. Plaintiff's physical restrictions precluded him from performing the duties of stockroom co-manager, the position he held before taking leave. Id. at 129. Plaintiff testified that he was capable of performing the district manager position, however, defendant filled that position before plaintiff returned to work. When plaintiff's doctor removed his "light work" restriction, defendant offered plaintiff the account sales position, which paid more than the collections position and heightened plaintiff's responsibilities.

Further, plaintiff testified at his deposition that he did not believe Koenig was motivated by plaintiff's invocation of workers' compensation when he assigned plaintiff to the account sales position or terminated him for unauthorized use of a company vehicle. Holte Dep., p. 150. Thus, plaintiff has failed to show that his position transfers and termination were related to his

24 - OPINION AND ORDER

workers' compensation leave.

Construing the evidence in the light most favorable to the plaintiff, I am unconvinced that a reasonable juror could find that plaintiff has provided evidence sufficient to create an inference that the terms and conditions of his employment were changed because he invoked the workers' compensation system. Therefore, defendants motion for summary judgment as to plaintiff's claim of discrimination pursuant to Or. Rev. Stat. § 659A.040 is granted.

2. Failure to Reinstate

Plaintiff also alleges defendant unlawfully discriminated against him pursuant to Or. Rev. Stat. § 659A.043 by not returning plaintiff to a management position after his workers' compensation leave. The Oregon statute protects the right of employees who take leave for workers' compensation to be reinstated to their former positions. Or. Rev. Stat. § 659A.043.

Plaintiff claims he should have returned to work in January 2008 as a district manager, rather than a collections clerk. Plaintiff also argues that once he was released from work restrictions in August 2008, he should have been transferred to a management position, instead of account sales consultant.

Defendant counters that it initially placed plaintiff in an available clerical position that suited plaintiff's restrictions. Once plaintiff's work restrictions were lifted, defendant promoted plaintiff to account sales consultant. Defendant claims plaintiff did not object or request a management position. See Holte Dep., p. 158. Rather, plaintiff testified that he was "just happy" to

25 - OPINION AND ORDER

continue working for defendant.  Id.

When plaintiff returned to work in January 2008, his doctor
restricted him to "light duty" work.  Although it is unclear if the
district manager position qualified as "light duty" work, defendant
had filled the position in December 2007, before plaintiff returned
from leave.   Plaintiff contends that even if the new district
manager was hired before plaintiff returned to work, the new
manager did not actually start work until January 2008.  I do not
find this fact material.  Regardless of when the new district
manager began, defendant filled the position before plaintiff
returned from leave.

Plaintiff also fails to show that his September 2008 transfer
to account sales consultant constitutes a failure to reinstate.
Plaintiff's doctor lifted his work restrictions in August 2008, and
one month later Koenig offered plaintiff the sales position.
Plaintiff has not shown that a management position was also
available at the Plant at this time, and the sales position was
both higher paid and more demanding than the collections clerk
position.   By plaintiff's own account, he was happy with the
position transfer.  Holte Dep., p. 158.  I find that plaintiff has
failed to show defendant violated Or. Rev. Stat. § 659A.043, and
therefore, defendant's motion for summary judgment as to this claim
is granted.

F.  Initiation of Civil Suit

Plaintiff claims unlawful discrimination on the basis of his
initiation of a civil suit pursuant to Or. Rev. Stat. § 659A.230.

26 - OPINION AND ORDER

Oregon law precludes an employer from discriminating or retaliating against any employee who initiates a civil suit against his employer. Id.

Plaintiff claims defendant discriminated against him after he filed the original complaint in this case in November 2008. Plaintiff claims he was fired one month after initiating a lawsuit, and argues that temporal proximity alone establishes causation.

Defendant counters that plaintiff must show more than the one month time lapse between his civil suit and his termination to show retaliation. Defendant argues that no Plant employee, including general manager Koenig, made any remarks to plaintiff regarding his civil action, and that plaintiff alleges no instances of discrimination or unfair treatment between November 2008 and his termination in December. Moreover, defendant emphasizes that plaintiff's termination was the direct result of his misuse of his company truck on December 19 and 20, 2008. Defendant learned that plaintiff was using the company vehicle for non-business purposes when another driver called to report plaintiff for drunk driving suspicions.[9] Plaintiff was driving the company truck at or around midnight, and parked at an adult store. The terms of plaintiff's employment at the time restricted plaintiff's use of the company truck to business hours. Plaintiff admitted to drinking a beer or two earlier in the evening and admitted to parking at the adult

---

[9] Defendant's company vehicles have bumper stickers with a telephone number and identification number, so other drivers can report the driving quality of a specific company car or truck.

store.  Holte Decl., p. 24.  After speaking with plaintiff about the incident, defendant fired plaintiff on December 29, 2008 for unauthorized use of his company vehicle.

Construing all the evidence in favor of plaintiff, I am unconvinced that a reasonable juror could find that plaintiff has provided sufficient evidence to link his termination to his initiation of this lawsuit.  Therefore, defendant's motion as to this claim is granted.

G.  Wrongful Discharge

Plaintiff alleges the common law tort of wrongful discharge on grounds that defendant terminated him for filing a civil suit against defendant and taking medical leave.  Oregon courts recognize wrongful discharge as a narrow exception to the general rule of at-will employment.  Dunwoody v. Handskill Corp., 185 Or. App. 605, 609, 60 P.3d 1135 (2003) (citing Nees v. Hocks, 272 Or. 210, 536 P.2d 512 (1975) as the Oregon Supreme Court's first recognition of the tort).  Oregon courts have recognized three categories of wrongful discharge cases: (1) where plaintiff is discharged "for fulfilling a societal obligation;" (2) where plaintiff is discharged for pursuing private statutory rights; and (3) where plaintiff is discharged for reasons that frustrated an important social interest but "an adequate existing remedy protects the interests of society so that there is no need to extend an additional remedy for wrongful discharge." Dunwoody, 185 Or. App. at 611, 60 P.3d 1135 (quoting Delaney v. Taco Time Int'l, 297 Or. 10, 15-16, 681 P.2d 114 (1984)).

Plaintiff has put forth no evidence that his discharge was wrongful or that defendant discharged him for exercising his rights under state and federal law.  Plaintiff also admits the relevant conduct underlying defendant's stated reason for terminating him. In sum, I find no triable issue of fact, and therefore, defendant's motion for summary judgment with respect to the wrongful discharge claim is granted.

### IV. Conclusion

For the reasons set forth above defendant's motion for summary judgment (doc. 34) is GRANTED, defendant's motion to strike (doc. 76) is DENIED as moot, and plaintiff's motion to supplement the record (doc. 84) is GRANTED.

IT IS SO ORDERED.

Dated this 27 day of April, 2010.


_____
Ann Aiken
Chief United States District Judge